Next matter is Simon v. City and County of San Francisco. And Mr. Holtzman, whenever you're ready. Good morning, Your Honors, and may it please the Court, Deputy City Attorney Alexander Holtzman for the City and County of San Francisco and Sheriff Paul Miyamoto. I would like to reserve five minutes for rebuttal, and I'll keep my eye on the clock. This appeal turns on the Superior Court's orders and hearings and the criminal defendant's  The district court incorrectly entered a preliminary injunction on plaintiff's facial claims preventing the sheriff from sharing the location of participants in the pretrial electronic monitoring program with other law enforcement agencies. I have three main points that I would like to address this morning. First, the defendants were required to raise any issues they had with the ordered conditions in their criminal cases. Well, I know you have three points, but I also have three points that maybe you can answer in your presentation. So the first is, the challenge that I'm having, trying to understand how your position falls in here, is the alleged and lawful delegation of power. And maybe in your comments you can address that, because to me it seems that it was a sheriff who imposed these conditions and not the court. So I'd like you to address that. Second point, if you could address, is this alleged order by the Superior Court. There was, according to California case law, it's required to be in writing, according to Little and the cases that followed, it is required to be in writing, and it was not in this case. So if you can address that as well. And finally, whether the judge's advisement, some of the judge's advisement, about what the sheriff's conditions are, whether that constitutes an actual order. So there's three separate concerns that I have that maybe you can address in your presentation. Of course, Your Honor. Thank you. So I think maybe then I'll move. There's a venue question, which is the first issue, which is that the criminal defendants were required to raise, I think, exactly the issues that you describe in their criminal court cases. Instead they accepted the conditions. Wait, you're not answering my question. Let me start. Let me break it down. First question. Why isn't this a delegation of, a lawful delegation of authority by the Superior Court judge to the sheriff? Start there. Thank you, Your Honor. So I think that the two places to look there is Carmel Valley and People v. Panoli. Carmel Valley sets out the California general standard for separation of powers and tells us that in order to be a separation of powers violation, the act by, in this case, the executive must defeat or materially impair the exercise of the other branch's power. And People v. Panoli applies that to supervision programs and tells us that the delegation to the probation officer, delegation to the executive, of even the choice of a whole program, which program to use, does not violate separation of powers. So I think it's important here with respect to that choice that it is the Superior Court that decides.  Before the Superior Court imposes a condition, there needs to be an individualized determination. What is the individualized determination that the Superior Court judge makes here in order to determine that they're going to allow this data sharing essentially to follow them wherever they go? So the individualized determination is that the pretrial electronic monitoring program by the sheriff is the least restrictive, reasonable basis to allow someone to be out of custody. There is no obligation under any law that the sheriff offer a smorgasbord of programs based on different circumstances. The sheriff offers a program and the Superior Court gets to decide whether to use the program or not. And I think it's important that the vast, vast majority of defendants who come before the San Francisco Superior Court for release determinations are not released subject to participation in the PTEM program. Ninety-five plus percent are not released subject to the PTEM program. May I ask a question? In the individualized determination that the judge was asking you about, what role does the diversion project play in informing the judge of the individual defendant so that the judge can make his mind up whether to allow the defendant O.R., his own recognizance, bail or some type of program? Yeah. So for each of these defendants, excluding some basically irrelevant marginal examples, the pretrial diversion project prepares a PSA, which is a report to the judge about a recommendation. And I think it's important that in more than 50 percent of the cases where the San Francisco Superior Court is placing people on the PTEM program, the diversion project has said that there are no reasonable conditions under which the person can be released. Let me ask you one more question. This diversion program or project, is it called Diversion Project, right? I believe so. Yes, it's a project. I believe so, Your Honor. Who funds it? They are a contractor with the sheriff. So we fund it, but it is, I believe, a nonprofit. Does it have a board of directors or do you know anything about it? I apologize, Your Honor. I don't know the government structure of the nonprofit.  I won't ask any more questions. I know that we have a contract with them to... This is Sentinel? Is that who we're talking about? I don't think so, no. I think we're talking about the diversion project that prepares the PSAs, the reports. Oh, okay. They're also responsible for another of the options that's available to the Superior Court, the assertive case management. Again, that's something that's provided by them, I think, as part of the contract with the sheriff. Well, but hold on. So according to this program, though, the individuals would allow their data to be shared with the sheriff's office, and the sheriff's office can then allow other law enforcements, any law enforcement officers, to obtain that information, correct? I don't think that there are parameters on that that I think we've described. Well, isn't that what the advisement says? I do think it's what the advisement says. So let's assume that the advisement that was probably produced by the sheriff's office says that. Let's assume that for a second, because I believe that's what it says. If it says that, and law enforcement agencies can get that information, isn't that sort of a loophole around the whole warrant requirement? I don't think it's a loophole, Your Honor. I think it's — I think it means that there is no warrant that's required. Right. So — And that's not a comment. So normally, when someone is asked for someone's location, you would need to get a warrant to do a trace, for example, correct? Yes, Your Honor. And isn't this, then, a loophole to get that information without getting a warrant or probable cause? I don't think it's a loophole, Your Honor, for two reasons. I think the first to start with is that it is not an independent Fourth Amendment search. So the minimum nature of an electronic monitoring program is electronic monitoring of the location of a defendant. So there's no question, and plaintiffs haven't urged, that any aspect of the collection of the data is unconstitutional. Well, is that exactly contrary to Carpenter? No, Your Honor, because in Carpenter, the plaintiff — sorry, the defendant, the criminal defendant, because again, a key issue here is the sort of unusual posture of this case as postured against the sheriff, but the defendant in that case did not consent to the cell site location information being shared. Oh, okay. The Carpenter involves members of the public whose location is traced over time. Here, there's just no question that the criminal defendants have agreed, in exchange for release from custody, to the conditions of the PTEM program and at a bare, bare minimum that even plaintiffs haven't asserted that they did not agree to the sharing of location data. And can you address — So Carpenter is just totally different in that way. Can you address the other — one of the other issues, which is whether or not this was a writing under Little? How do we get around that problem that you all seem to have? Sure, Your Honor. So I think there are two writings here. There's the minute order, which memorializes that the defendant has accepted the conditions as stated on the record, as does the EM order. And I'm happy to pull up the EM order and walk through it if you'd like, but the defendant signs it acknowledging, again, the conditions described by the court. It is a total — No, but it has to be — it has to be an order of the court. That's the whole point of Little. What's the order of the court ordering that their data sharing will be released, that that is something that they are authorizing? Both the minute order, which is an order of the court, and the EM order, which is an order of the court. So your argument seems to be a sort of incorporation by reference type of an argument? I think it's a — Because it's not explicit, correct? I think it's memorializing conditions as stated on the record, and I think courts everywhere — Well, you'd agree with me that it's not explicit, correct? I think — I would say express, but I think it is explicit. I don't know that it's expressed, but sure, I agree with you. Okay. Those words were not in the order, correct? That's right, and Little does not require that. And the third question, I guess, I have is whether or not the advisement was, in fact, an order by the court or an advisement. So that's sort of the other sort of nuanced question, but it's a question nonetheless. This advisement that is read is read by a judge. Is the reading of that advisement the order? Is that what you're saying? I think it is, Your Honor, yes. Then why is it that the judge is saying, according to the electronic record, indicating that this is an order, or rather, a condition of the sheriff's office? It is not an — it doesn't say, is this an order of the court? It says, this is a condition of the sheriff's office. I've been asked to read this. How is that an order of the court? So I guess I have two responses, Your Honor. The first is the sort of facial challenge issue, which is they need — my friends on the other side need to show that the conditions here are unconstitutional for everyone on the P-10 program, not just the defendant in that transcript. They definitely cannot do that. And second, Your Honor, the — I think that description where the court says, you know, you will be subject to this, you'll be subject to this, you'll be subject, is exactly the way that courts typically put in place supervision conditions. So in some sense — Well, that's not how I did it. I did it differently. I actually told people, when I got a report from pretrial services, I indicated, those are the recommendations of pretrial services, and I'm adopting X, Y, and Z, and not adopting X, Y, and Z. Here, it's an advisement, but it's not saying that they are being ordered by the pre-court judge to do that very specific thing. Yes, Your Honor. I think that maybe brings us back to the separation between the sheriff's office, which offers a program that a superior court can use or not use, as is appropriate under In re Humphrey, and the court, which is empowered to make that decision. The sheriff has no power to put someone on or not put someone on — well, that's not — the sheriff has no power to put someone on the P-10 program. It is only the superior court that can — that can make that decision, and it is up to the superior court to determine whether the P-10 program is the least restrictive, reasonably available set of conditions. And so your position is, by reading the advisement, the judge is ordering that individual to give up those rights? Yes, Your Honor, and I think the plaintiffs in this case, the individual representative plaintiffs, exemplify why these conditions, why the information sharing condition, for example, is reasonable, is essential with, you know, repeated domestic violence, repeated violent assault, possession of guns, and other very concerning issues with their behavior while on supervision. Again, your answer then is yes, that the reading is enough. That's the order that you're indicating? Yes, Your Honor. Okay. Thank you. So, I think briefly on the Fourth Amendment and California privacy claims, given the superior court's hearings and orders, the criminal defendant's consent, and the public safety and special supervisory interests, the public — the Fourth Amendment and California privacy claims must fail. This case is very different than United States v. Scott and Carpenter v. United States. We spoke briefly about Carpenter. I think Scott is distinguishable on several grounds, including — Distinguish that, please. Sure. So, first, Your Honor, the search in Scott was definitely an independent Fourth Amendment search drug test. Here, for the reasons we've talked about, Maryland v. King and others, there was no independent Fourth Amendment intrusion with the sharing of location information. Second, United States v. Scott did not involve a hearing on evidence with representation by counsel with a clear and convincing evidence standard. That's exactly what Scott says was missing in the Scott case, says it was not an adversary hearing. Here, there is an adversary hearing. I think, third, Scott says that the search that issued the drug test was unrelated to the legitimate interests of pretrial monitoring. There is just no question plaintiffs haven't contested that the sharing of location information is very much related to the legitimate purposes of pretrial monitoring. And then, lastly, again, United States v. Scott was a motion to suppress evidence, which is the correct posture in which to bring a challenge to a condition like this one, not in a lawsuit against the supervision organization. So, I see I've got about three minutes left and would reserve that if that's all right with the panel. Any questions right now? Why don't you reserve your time? Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court, Shilpi Uggerwal from the ACLU of Northern California on behalf of Appalese. To start, I'd like to make two points. First, the superior court is not ordering the sheriff's data sharing policy. The advisal that the court began issuing in May is not a court order. The district court found the following with respect to that advisal. Quote, although the superior court now provides criminal defendants with relatively more detail when imposing EM, that information still amounts to a description of the rules imposed on a blanket basis by the sheriff. End quote. The advisal is also not an order because legally it cannot be one. An order must be in writing and data sharing is notably absent from the court's written EM order. Other conditions are listed there, but not data sharing. The policy of limitless data sharing comes from the sheriff, not the superior court. Pardon me. Are you saying that the order makes no mention to the sheriff's electronic monitoring program? The order makes no — the written EM order makes no reference to the data sharing policy, to data sharing. It doesn't say so expressly. It just mentions the program. It mentions the electronic monitoring program, but it says nothing. It is silent about data sharing. And the other conditions that the court is ordering as conditions of pretrial release are listed on that EM order. And the district court specifically noted that the EM order does not provide any mechanism for the court to order EM without data sharing, which belies any sort of notion that they're making an individualized inquiry about data sharing specifically.  I've got a couple of questions here. Let me start with just a simple one. So when they're given the advisal, they're told that if they wish to get out, they can — the court will release them on electronic monitoring. They are not told that they will have to wear an ankle monitor, that they'll be subject to a 50-mile radius. They're not told that the data can be shared by the sheriff. What are they told and what are they not told when they're initialing all of these paragraphs? So I think there's some variation in sort of what specifically people are told in every hearing. The advisal states that they — I have the advisal right here. It's listed on ER 181. So the advisal lists sort of three prongs to how to — that go with — that describe certain conditions that they're on. It's not clear what specifically about EM every judge is conveying to every defendant because there's some variation.  But what does the form you have say? The — sorry. I'm sorry. Is Your Honor referring to the advisal or to the EM form order? So what is it that — what is it that they're given? They are given something. They're given an oral advisal by the court. Is that correct?  That's correct. Okay. And that is the pretrial electronic monitoring admonishment.  And that's at ER 181. Okay. So they are told that EM will be continuously tracked and recorded, and that information will be preserved and maintained. Your GPS location data can be shared with law enforcement agencies. So they are told. They're told in the advisal. Correct. Okay. Or at least the advisal says it. Whether the court is consistently delivering this advisal is itself a fact issue. But, yes, the advisal contains that information.   But you're here on a facial challenge. Correct. So I think we've got to assume that this is — that since this is available and some judges are giving it, I think that in order to maintain a facial challenge, you're going to have to argue this on the grounds most favorable to the city. Correct. But as a legal matter, even if you can assume that every single judge is providing this advisal, the advisal itself does not constitute an order. So that's failure one that is facially true of every defendant. Okay. So what do the orders look like? So the order is found at ER 169. That is the EM written order that defendants are made to sign at this point. In May of 2023, in the middle of this litigation, that is the new EM order that defendants are now asked to sign. And that EM order reflects, notably, a more individualized inquiry with respect to the other provision that we were challenging in this case, the four-way search clause. But it does not contain an option for the court to order or to toggle the data-sharing provision, to order EM with or without the data-sharing. And that was part of what the district court relied on to say. There's no individualized inquiry. So, counsel, I think it's a really interesting argument. There's a lot of other things that judges don't get to decide as well. And that occurs throughout the system, so throughout the process. Generally, when a defendant has been convicted and they're now sentenced by the court, the court has to tailor the sentence to the defendant. But the judge may recommend where they're held, but he doesn't get to decide whether they go to Pelican Bay or whether they go to San Quentin. He doesn't decide whether they get to have a cell all by themselves or whether they have to share the cell. The judge doesn't get to say, well, you weren't that bad, so I'm going to give you an additional two hours of time in the exercise yard. Those are all standard conditions, and they have to be conferred by somebody else. So how do you get to atomize how the sheriff monitors this program? If the sheriff had to tailor this to any order that was issued, this would be a nightmare. And at some point, the sheriff might just say, we're done and we're out. EM might not be available, and your clients go to jail. So your point is well taken, Your Honor. What — there certainly are aspects of electronic monitoring that rest squarely with the sheriff. But any condition that introduces new intrusions on the individual's rights are within the purview of the judiciary. Those are things that, under separation of powers, the judiciary has to weigh in weighing the individual's rights against public safety. But the judiciary is now well aware of what the EM program is — how they're administering the EM program. So the superior court gets to decide, this is a good thing or it's a bad thing. And you better — you ought to know in advance, Mr. — Mr. Accused, not — about to be a defendant, that if you want to be out, these are the conditions that are — that are being imposed. That's correct. But the superior court's awareness that the sheriff is now imposing this additional intrusion doesn't somehow transform that advisal into a court order. And I would note that the district court was very careful in holding that they were merely reading a description of what the sheriff asked them to read. They weren't making an individualized determination about data sharing. But they are making an individual determination as to whether they should be released on EM. They are. And now everybody knows what EM means. I think it's — I think it's subject to dispute whether everybody knows what — But at least if somebody knows, and that's the conversation you and I just had, on a facial challenge, you're going to have to assume that they've now initialed these forms, they've been given an admonishment. That's right. But again, I can't stress the point enough that what the court knows versus what the court is actually ordering based on an individualized inquiry are two different things. And it may be that the sheriff has now, in the middle of this litigation, told the court, can you start issuing this advisal? But that is different from saying that the court is considering all of the circumstances and ordering data sharing as to every single person on EM. Could — is the district — the — most of the restrictions on these folks when they're allowed out, is it a 50-mile radius? I believe it's 50 miles, yes. It's 50 miles. Could a district court say, well, what you did wasn't that bad, it's going to be 100 miles? Or, gee, I really don't like the fact that you're here before me again because you violated the prior order, so I'm going to let you out, but you've got to be within 25 miles. Why aren't those all individual determinations that require an order and require individualized determinations? Well, they — I mean, so to take your point — But the 50 miles is a standard condition, right? Correct. But the difference here is that the data sharing provision introduces new incursions on a person's Fourth Amendment rights. That is what places this squarely within the purview of the judiciary. And I would just note that to say that an additional intrusion — and I can get to that in a minute. I can explain further why this is an additional intrusion. But to say that the impetus for an additional intrusion can run in the direction of the sheriff creating the condition, saying to the district court, hey, we want to introduce this intrusion on every single person on EM, and then saying to the court, can you now read this advisal as a way to bless the constitutional intrusion that we are now initiating, turns the separation of powers analysis on its head. It basically says the sheriff can decide what additional constitutional violations it wants to impose on every single person on EM, and just as long as they are using the court to broadcast that intrusion, that that is somehow blessed. And that is why the court order requirement is so fundamental to this case. If the court were making an individualized determination, the court would memorialize that in the order, and the court could actually decide not to introduce data sharing. But the judge is making an up-down decision based on individual circumstances. They're making an up-down decision about — Just as they'd be making an up-down decision on a 50-mile restriction. It's either up or down on 50 miles. We're not going to tinker with the distances. Right. But the difference between the 50-mile radius and data sharing is that data sharing introduces a new constitutional violation. That's why we have an admonishment that lets them know that this is going to be an additional burden on you if you want out and are agreeing to, as a condition of being out, that you will submit to electronic monitoring. Correct. But the additional intrusion is not one that the court has made an individualized determination. And, again, I want to emphasize sort of as a second point, the breadth of this intrusion — this is not a mere sort of ministerial point about where the data goes. The breadth of this intrusion essentially says, look, electronic monitoring is ordered, and that means the sheriff can collect your data for purposes of EM. What this policy by the sheriff says is that once that data is stored by the sheriff, any other law enforcement agency can access that data. But how would a district court — how many superior court judges do we have in San Francisco? I couldn't tell you exactly. A dozen? Just pick a round number. I'm going to pick a dozen judges. So we have a dozen judges making individualized determinations. And some are saying you can monitor and you can share data, and some are saying you can't share data. How on earth does the sheriff administer that kind of a thing? You've got an interesting dialogue going on here between the superior court and the sheriff's office. The sheriff's office has at least got a single head to it, so we know who we're negotiating with. Who would the sheriff talk to to say, gee, this isn't a wise thing to do, and have 12 different judges making 12 different decisions based on the individualized circumstances, and then expect the sheriff to do this? The legislature could step in and solve all of this for everybody. But you have an interesting dialogue going on between the sheriff and the superior court. Pretty clear some of your superior court judges didn't like it at all.  So that sort of speaks to the point. If the fact that administering this on an individualized basis might be administratively difficult, that doesn't mean the presumption runs in favor of just imposing this on everybody. That means that the sheriff better come to the court with a really good and specific reason in individual cases why data sharing might be warranted. You can imagine a situation, and we're not sort of contesting, that there may be situations where the sheriff goes to the superior court and says, look, I have this EM releasee that exists in Fremont or in this other location, and in order for me to perform my function, I really need to share data outside of the scope of EM, how it's being authorized, and I need to share it with this other law enforcement agency, and the court can then consider it. That's not what the sheriff is doing here. They're saying for every person on EM, we're going to open our books and say any law enforcement agency can now access location data, which is very clearly protected under the Fourth Amendment by Carpenter. Any law enforcement agency can now access that location data of every single person on EM. So if they're administrating the EM to the other person, they can access it.  What are the limits of your principle? So let's suppose that ankle monitors are manufactured by, I don't know, Sony and Mitsubishi. Can the superior court judges decide which ankle monitor? Why not? Does that be an individualized determination? No, because the brand of the ankle monitor — the limiting principle is, does the particular thing introduce new incursions on someone's constitutional rights? And if the answer to that is yes, the court has to determine it in an individualized situation. If it is an administrative, ministerial function, the sheriff gets to do it. So the ankle monitor brand belongs with the sheriff. The mile radius, I would say that that lies with the sheriff. But data sharing is a new constitutional — But the 50-mile is an incursion on the right to travel. Pretty fundamental. Then that's — maybe that's a challenge that we would bring. But I think that the principle still holds fast. Well, but I need to — I need to figure — I'm going to have to figure this out. Correct. And so I need you to help me figure this out. So, yes. So let me — so to aid the court in this particular case, the limiting principle is, does this introduce new intrusions on a person's constitutional rights? And I can explain why data sharing does exactly that. So we know under Carpenter that people have a reasonable expectation of privacy in their continuous location data. Carpenter holds that squarely. We also know that when the superior court orders somebody on EM, they authorize the collection of that data, but only with respect to the purpose of EM. And we know there has to be this purpose restriction because of the particularity requirement. Because any time the government is authorized to collect private data on our behalf, they have to specify, for example, in a warrant, who the agency is, the purpose of that collection, and the time period of that — of that collection. This particular policy by the sheriff is unbounded by any purpose requirement whatsoever. It allows any agency for any purpose to collect that information. And when you think — and Carpenter takes great pains to sort of lay out all of the possible intrusive reasons why the government might want to access location data, to see where we pray, to see where we protest, to see — to see where we're getting our healthcare. And for that reason, the particularity purpose requirement is particularly important. So the sheriff absolutely is authorized to collect this information. The sheriff absolutely is authorized to access this information for purposes of administering EM. But what the sheriff is doing vis-a-vis data sharing is they're essentially saying now every other law enforcement agency can access this information literally by filling out a form and checking a box. They can look into the continuous location data, essentially surveil every single person on EM for any purpose possible. And that is why it constitutes a new intrusion on Fourth Amendment rights, and that is why the court has to make an individualized inquiry as to the propriety of this particular condition. That's not happening here. The district court found repeatedly in its order that that wasn't happening here. Both because it's not written in the order and because the circumstances surrounding how the advisal came to be clearly show that the impetus for the order is running from the sheriff to the court. The court is not making an assessment that this is an appropriate condition. And because it's a new incursion on constitutional rights, it has to be ordered by the court. Could the superior court simply say, I refuse to allow EM because there's an unconstitutional condition here? Can the court — Why wouldn't a superior court, if we agree with your argument, very powerful argument, very well done, but why wouldn't a superior court who said the GPS, the data-sharing provision is a new provision and it's a new incursion on Fourth Amendment rights, and as a consequence, I'm not sure that it's required here, so I simply am not going to impose EM? So we think that the superior court could do some version of that. So I want to stress again that this case is up before Your Honors on preliminary relief. The advisal began — started being issued in May of 2023. If the city now wants to say that the advisal has somehow transformed into a court order or the court is, in fact, making an individualized determination, that can be sort of fleshed out in discovery at this point. But as a preliminary matter, the advisal that was being given is not found to be a court order. And there is a lot of variation and confusion, frankly, as to how the advisal actually operates in individual cases because it was introduced midstream. But as an initial matter, I think the district court very powerfully found, forcefully found, that the impetus for that advisal really came from the sheriff. It was not the case of the district — that the superior court was making an individualized determination. And that is the basis on the district court's finding that it should be enjoined. I thought there was a declaration from the deputy sheriff Johnson that the sheriff's office had actually consulted with some of the superior court judges. I mean, again, this is a really interesting dialogue going on between the sheriff's office and the — and it's not clear how they're supposed to conduct that dialogue, whether it has to be conducted on a one-by-one defendant, whether it has to go to the state legislature, whether there's some other way of negotiating it. But there is a suggestion here that it was discussed with the superior — with superior court judges. I don't know how many of them there were in the room, but —  I mean, we don't dispute. In fact, we very much agree that the sheriff asked for a meeting with the superior court to have this advisal given. But to answer your question, when does it have to happen on an individual one-by-one basis, it has to happen on a one-by-one basis when the thing that the sheriff wants introduces new constitutional incursions on a person's rights. That's what data sharing does. That's why it does have to happen on an individualized basis. And this is under Scott and York and — and Johnson's declaration, stating that on — on April 5th, 2023, I met with Presiding Judge Ann Christine Masulo, supervising criminal judge and assistant presiding judge Rochelle East. They indicated the superior court was reviewing revisions. So the superior court has had an opportunity to look at this. And it indicated that they planned to begin using the revised template order and revised accompanying admonitions on or around May 1st. And that is correct. And that revised E.M. order that the superior court willingly started issuing does have a change with respect to the other provision we are challenging, the four-way search clause. It says nothing about data sharing. So even after being given an opportunity to revise the written E.M. order, the — the superior court did not begin ordering data sharing as part of its written E.M. order. Just a second. Let me get some chronology here. Do you agree that the admonition is given at E.R. 181 before the order is signed at E.R. 169? We cannot say that in every single case before the superior court that the — Do you have any evidence that that is not the practice? We have — we don't have any evidence that the advisal isn't being given. What we do have evidence of and what's in the E.R. is a transcript reflecting that superior courts are treating the advisal differently. They're — they're couching it in different channels. But as long as you have one court that has issued the advisal, you don't have a facial challenge. But only if that advisal is a court order, which it is not legally. Well, that's a different — that's a different argument. I got that. But — but you keep shifting off of the on-its-face versus as-applied, and that's a problem for you. So let me be clear on the as-applied versus facial challenge. So setting aside the issue of what the — whether the advisal is actually an order or not, because I understand that's not what Your Honor is asking about, let's just assume that the advisal is an order. In that case, the sheriff can begin doing whatever version of data sharing that the superior court is purporting to authorize pursuant directly to that court order. It doesn't need to act pursuant to this policy. And I think that is really the problem here, is the sheriff wants to act pursuant to a policy where they say, we are going to cloak every single person with — on EM with this condition that we can share their data with anyone. If there actually is a case where the court is saying, I am ordering after an individual this broad of a provision, I'm just going to order it, I'm ordering drag mat surveillance for this particular person, the sheriff can act pursuant to that one instance of a court order. But there is absolutely nothing in the record, and the district court very strenuously found that that is not the norm. That is not what is actually happening in the court. That's why the policy by the sheriff can be enjoined. If there are individual instance — can be facially enjoined, if there are individual instances contrary to what the district court found under a clear error standard, contrary to what the district court found, if there are individual instances where there is a court order because this court wants to find that the advisal is an order, the sheriff can act pursuant to that order. It doesn't need to enact this policy of its own. Roberts. Counsel, I really appreciate the answer to my question. I realize I've taken a good deal of your time. I have one last question. I hope it's a simple one. Please, yes. There were two different classes that were certified here. There's the pre-May 2023 — Correct. — class and the post. So in that pre-May 2023, prior to the change in policy here, so this has been a moving target, that class seems to be diminishing. The last thing that I could find in the record was that there were 37 people in that class. I think it is a shrinking number, yes. And do we have any idea how many are left? I couldn't tell you that. I could provide it on supplemental briefing. I'm just not sure as I stand here today. Okay. Thank you. That's all I have. Any additional questions? Very well. Thank you very much. Thank you, Your Honors. Thank you again, Your Honors. So first — apologies, Your Honors — first to, I think, Judge Bybee, your question about how many people are remaining. As of this morning, four individuals are on the PTEM program without — where we are not enforcing a warrantless search condition because the Superior Court has not expressly ordered one. So turning then to the things my friend on the other side discussed, I think the discussion makes very clear that an up-down decision on the PTEM program meets the separation of powers test under California law. My friend on the other side talked about the sheriff advocating in the Superior Court. The sheriff is not a party in the Superior Court. The Superior Court case is the people, that is to say the district attorney's office, versus the defendant. The Superior Courts have lots of other options other than PTEM, including assertive case management, drug conditions, weapons conditions, drug treatment programs, and others. They can — they're free not to impose EM, and that's what some judges have done. So I think Panoli really answers the question here. Panoli describes a concern about intensity of treatment, and I think that is very equivalent to the degree of the intrusion that plaintiffs are discussing, and says, As desirable as such narrowing of the probation officer's discretion may be, we are not prepared at this time to hold that its absence constitutes prejudicial error. So I think that really answers the question on that. With respect to somebody knows that some defendants might not know that, among other things, is the role of the defense attorney, and Alcala tells us that the waiver — we need to understand that waiver as strategic. They have extremely competent counsel. In addition, defendants who have been on the program multiple times, including Plaintiff Simon, of course know what the conditions of the program are. My friend on the other side discussed that there is some variation. Some variation defeats the facial claim here. And then finally, I think the current EM order at 2 ER 169 reflects that the judge orders the defendant to follow the program rules. Those are the rules that are described on the record. That is a written order signed by the defendant, signed by the judge. So I think in closing, the program here offers options to judges, protects the public, and we would urge the court to reverse and vacate. Thank you, counsel. Any other questions?  Thank you. A very well-argued case by both counsels. I know we all appreciate it. Thank you very much. This matter will be submitted. And we will be in recess.
judges: BYBEE, BEA, MENDOZA